STATE OF VERMONT
SUPERIOR COURT — ENVIRONMENTAL DIVISION

}
**In re North East Materials Group** } Docket No. 35-3-13 Vtec
**LLC, Amended Permit** }
}

### Decision on Motion for Party Status

Jane Berard, Charles Brown, Cathy and Forrest DeGreenia, Earl Everhart, Cynthia Fitzgerald, Steve Martin, Gustave Osterberg, Dana Robinson, and Ricky Safford (Movants) wish to appeal a decision by the Act 250 District 5 Environmental Commission (the District Commission) issuing a permit to North East Materials Group, LLC (Applicant) for a hot mix asphalt plant (the Project) within the Rock of Ages Quarry in Barre Town, Vermont (the Town). The District Commission denied Movants party status below under particular Act 250 criteria, and they appeal that denial of party status pursuant to 10 V.S.A. §§ 8502(7) and 8504(d)(2)(B) and move for appellant party status under particular Act 250 criteria. [1]

### Factual Background

For the sole purpose of putting the pending motion into context, we recite the following facts, which we understand to be undisputed unless otherwise noted:

1.     On April 11, 2012, Applicant filed an application for the construction and operation of a hot mix asphalt plant within the Quarry.

2.     On April 26, 2012, the Chair of the District Commission initially allowed Applicant to use a modified list of abutters for the purpose of providing notice of the Project.

---

[1] As explained in our decision on Applicant's Motion to Dismiss Parties, issued concurrently with this decision, Movants fail to allege a reasonable possibility of harm to their particularized interests under Criterion 10. This determination renders moot the motion for party status under Criterion 10 by Jane Berard, Cathy and Forrest DeGreenia, Earl Everhart, Cynthia Fitzgerald, Steve Martin, Gustave Osterberg, Dana Robinson, and Ricky Safford.

In the instant motion, Movants Berard and Everhart seek party status solely under Criterion 10. Since we do not address Movants' claim for party status under Criterion 10, Movants Berard and Everhart do not appear further in this decision. We note that the District Commission granted Movants Berard and Everhart party status under other criteria; for Movants Berard and Everhart those criteria are not at issue in this motion for party status, which concerns only criteria under which Movants were denied status. Applicant nonetheless objects to Movant Berard's party status under Criteria 1, 5, and 9(K) and to Movant Everhart's party status under 1, 8, 5, and 9(K). This is not the appropriate forum for such objections.

3. The District Commission granted certain individuals, all represented by Attorney Christopher Ahlers of the Vermont Law School's Environmental and Natural Resources Law Clinic, preliminary party status under various Act 250 criteria.

4. The District Commission held a hearing on the application on May 16, 2012, continued to June 19, 2012 and then to July 17, 2012. The June and July continuances concerned the merits of the Act 250 application and did not involve additional party status requests.

5. On August 29, 2012, other individuals represented by Attorney Ahlers submitted additional petitions for party status.

6. The Chair rescinded the previous approval of the limited abutters list and required Applicant to submit a complete abutters list for the entire 1,200 acre property. Applicant did so.

7. On October 18, 2012, additional individuals represented by Attorney Ahlers submitted petitions for party status. The District Commission granted preliminary party status to certain of these late-appearing individuals under various Act 250 criteria.

8. The District Commission then convened a continuation of the hearing on December 3, 2012 for the purpose of receiving testimony and exhibits from the new parties and allowing cross-examination or rebuttal by Applicant.

9. As relevant to this motion, the District Commission revoked the preliminary party status of the following individuals under the following Act 250 criteria for the following reasons:

| | 1 - Air | 1 - Noise | 1(B) - Stormwater | 5 & 9(K) - Traffic | 8 - Aesthetics | 9(K) - Public Investment | Reason for denial of party status |
|---|---|---|---|---|---|---|---|
| **Charles Brown** | X | X | | X | X | | Failure to appear, be sworn in, or authenticate pre-filed testimony |
| **Cathy & Forrest DeGreenia** | | X | X | X | X | | Failure to appear, be sworn in, or authenticate pre-filed testimony |
| **Cynthia Fitzgerald** | X | X | | X | X | X | Failure to submit pre-filed testimony or exhibits |
| **Steve Martin** | X | X | X | X | X | | Failure to appear, be sworn in, or authenticate pre-filed testimony |
| **Gustave Osterberg** | X | | | X | | | Party status requested after October 18, 2012 deadline |
| **Dana Robinson** | X | X | X | X | X | | Failure to appear, be sworn in, or authenticate pre-filed testimony |

2

| Ricky Safford | X | X | | X | X | | Failure to appear, be sworn in, or authenticate pre-filed testimony |
|---|---|---|---|---|---|---|---|

## Discussion

When a person wishes to appeal from an Act 250 district commission decision to this Court, V.R.E.C.P. § 5(d)(2) and 10 V.S.A. § 8504 govern party status claims and challenges. For the reasons detailed below, we conclude as a matter of law that, under 10 V.S.A. § 8504(d), Movants have not shown that they are entitled to party status as appellants. However, we also conclude that certain Movants are entitled to party status as interested persons under 10 V.S.A. § 6085(c)(1)(E) under particular Act 250 criteria.

### I. Movants' Party Status as Appellants

In contrast to the practice before the former Environmental Board, those wishing to appeal a decision by an Act 250 district commission to this Court[2] must have participated in the proceeding below. See 10 V.S.A. § 8501(3) (listing, as a goal of the Consolidated Environmental Appeals Act of 2003, to "[e]ncourage people to get involved in the Act 250 permitting process at the initial stages of review by a district commission by requiring participation as a prerequisite for an appeal of a district commission decision to the environmental division.") To implement this goal, 10 V.S.A. § 8504 states, in part:

> No aggrieved person may appeal an act or decision that was made by a district commission unless the person (1) was granted party status by the district commission pursuant to subdivision 6085(c)(1)(E)[3] of this title, (2) participated in the proceedings before the district commission, and (3) retained party status at the end of the district commission proceedings. In addition, the person may only

---

[2] Although not strictly relevant to our determination on appeal, we note that participation in an Act 250 district commission hearing is not an element of party status at the district commission level. See 10 V.S.A. § 6085(c)(1) (listing persons entitled to party status) & 10 V.S.A. § 6085(c)(2) (detailing the contents of a petition for party status, which can be made orally or in writing). Of course, a district commission "shall re-examine party status determinations before the close of hearings" and, on motion of a party or on its own motion, "shall consider the extent to which parties continue to qualify for party status." 10 V.S.A. § 6085(c)(6). That re-examination, however, should concern parties' qualification for party status, not the effectiveness of their presentation on the merits of the case. A helpful analogue in the civil realm may be where a tort plaintiff fails to appear at trial or appears but offers only evidence inadmissible for lack of foundation. Although such actions may result in plaintiff losing on the merits, they cannot, alone, form the basis for the conclusion that plaintiff was not entitled to pursue his claims in the first instance.

[3] Several categories of persons "shall be entitled to party status" in proceedings before Act 250 district commissions, including "[a]ny adjoining property owner or other person who has a particularized interest protected by [Act 250] that may be affected by an act or decision by a district commission." 10 V.S.A. § 6085(c)(1)(E).

appeal those issues under the criteria with respect to which the person was granted party status.

10 V.S.A. § 8504(d)(1) (numbering added for clarity).

Movants argue that participation is irrelevant, because the statute goes on to state, "[n]otwithstanding subdivision (d)(1) of this section, an aggrieved person may appeal an act or decision of the district commission if the environmental judge determines that . . . the decision being appealed is the grant or denial of party status." 10 V.S.A. § 8504(d)(2)(B). Movants cite to In re Bennington Wal-Mart Demolition/ Constr. Permit, No. 158-10-11 Vtec (Vt. Super. Ct. Envtl. Div. Apr. 24, 2012) (Walsh, J.), for the proposition that when a person appeals a denial of party status under 10 V.S.A. § 8504(d)(2)(B), participation below is not required. Applicant argues that appeals under 10 V.S.A. § 8504(d)(2)(B) "are subject to dismissal if participation did not occur below." (Applicant's Resp. to Movants' Mot. for Party Status at 11, filed May 7, 2013.) We take this opportunity to further explain our interpretation of 10 V.S.A. § 8504(d)(2)(B). It is well settled that our objective in construing a statute is to effectuate the intent of the Legislature. Springfield Terminal Ry. v. Agency of Transp., 174 Vt. 341, 346 (2002).

In Bennington Wal-Mart, an Act 250 district commission denied preliminary party status to certain parties, which, as a practical matter, made their participation as parties with appeal rights impossible. In that circumstance, it is self-evident that persons may appeal to this Court under 10 V.S.A. § 8504(d)(2)(B) without having participated, because the denial of party status prevented them from participating as parties. Movants, in contrast, obtained preliminary party status and therefore did have the opportunity to participate before the District Commission. When parties who obtained preliminary party status appeal a denial of final party status under 10 V.S.A. § 8504(d)(2)(B), they must have availed themselves of the opportunity to participate in order to preserve their right to appeal to this Court. To interpret 10 V.S.A. § 8504(d)(2)(B) otherwise would eviscerate the participation requirement that the Legislature clearly articulated in 10 V.S.A. § 8501(3) and 10 V.S.A. § 8504(d)(1).

That Movants did not appear in person but rather had their attorney represent them is not necessarily fatal to their claim. See Natural Resources Board Act 250 Rule 14(C) ("A party to a case before the district commission may appear in person, or may be represented by an attorney or other representative of his choice"). The question is whether Movants' attorney presented evidence or legal argument at the hearing on Movants' behalf sufficient to constitute "participation" on the merits under particular Act 250 criteria. In this motion for party status,

4

Movants bear the burden of proving that they participated. If Movants meet this burden, we will continue with the 10 V.S.A. § 8504(d)(2)(B) analysis of whether they are entitled to party status as appellants.

Neither the relevant statute nor the Act 250 Rules define "participation" for the purposes of preserving appeal rights. A party status request is a preliminary issue requiring a district commission to determine <u>whether</u> a person may participate as a party in the proceeding; however, such request cannot, alone, also constitute participation in the proceeding. Furthermore, the Act 250 rules are clear: "Pre-filed testimony is intended only to facilitate presentation of a witness's direct testimony. The witness must be present at the hearing to present his direct testimony in writing and to affirm its truthfulness," and the witness must remain available for cross examination. Act 250 Rule 17(D)(2). Thus, while submitting pre-filed testimony can be a time-saving practice in preparation for participation, pre-filed testimony alone cannot constitute participation in the Act 250 context.

In this case, Attorney Ahlers submitted an affidavit explaining his understanding of how Movants "participated" when he represented them at the December 3, 2012 hearing before the District Commission. (Ahlers Aff. at 1–3, filed Apr. 16, 2013.) Attorney Ahlers does not indicate that at the hearing he presented anything beyond the Movants' requests for party status and some pre-filed (but not authenticated) materials. We conclude, therefore, that Movants are not entitled to party status as appellants due to their lack of participation. While we appreciate Movants' efforts, we do note that in advance of the hearing the District Commission did remind them of the importance of participation at the hearing itself.

## II. <u>Movants' Party Status as Interested Persons</u>

Despite their failure to prove entitlement to party status as appellants, Movants may nonetheless be entitled to interested person status to participate in the appeal of other appellants in this case. Interested person status requires a showing of the reasonable possibility of harm to a particularized interest just as appellant party status does, but interested person status does not require participation in the proceeding below. "Any person may intervene in a pending appeal if that person . . . is a person aggrieved, as defined in this chapter . . . ." 10 V.S.A. § 8504(n). The chapter defines "person aggrieved" as "a person who alleges an injury to a particularized interest protected by the provisions of law listed in section 8503 of this title, attributable to an act or decision by a . . . district commission . . . that can be redressed by the

environmental division or the supreme court." 10 V.S.A. § 8502(7). Further, V.R.E.C.P. 5(c) allows any non-appellant to enter an appearance by complying with certain procedures.

An interested person's protected interest must be particularized; general policy concerns shared with the general public are insufficient. In re Pion Sand & Gravel Pit, No. 245-12-09 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. July 2, 2010) (Durkin, J.); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Hinesburg Sand & Gravel Co. v. State, 166 Vt. 337, 341 (1997). The fact that multiple members of the general public share a certain interest, however, does not necessarily mean that the interest is not particularized. In re McLean Enters. Corp., No. 2S1147-1-EB, Mem. of Decision at 6 (Vt. Envtl. Bd. Sept 19, 2003) (explaining that it is irrelevant if other individuals may also be similarly affected by a development as long as the impacts to the petitioners are particular to them, concrete, and are not impacts affecting the common rights of all persons).

Moreover, each Movant must demonstrate a causal link between a decision on the proposed asphalt plant and an alleged harm to a particularized interest protected under a specified criterion. See In re Granville Mfg. Co., No. 2-1-11 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. July 1, 2011) (Durkin, J.). While a sufficient showing cannot be purely speculative, a movant need simply meet a minimum factual threshold to satisfy its showing requirement. See In re RCC Atlantic, Inc., No. 163-7-08 Vtec, slip op. at 8 (Vt. Envtl. Ct. May 8, 2009) (Durkin, J.) (litigants "must at least state [that] their fears and concerns have some factual basis and are not based solely on speculation"); In re Bennington Wal-Mart Demolition/Constr. Permit, No. 143-7-09 Vtec, slip op. at 10 n.5 (Vt. Super. Ct. Envtl. Div. Apr. 24, 2012) (Walsh, J.) (requiring a showing of "a reasonable possibility that a decision on the proposed project may affect a person's particularized interest") (emphasis added). An adequate threshold showing must describe the evidence or testimony to be introduced at the merits hearing and must be sufficiently concrete for the Court to understand the materiality of the evidence or testimony. Id. at 8–9 (internal quotation omitted). We emphasize, however, that for an interested person determination, the claimant need only show that the impact may occur; whether it will occur is a matter to be addressed on the merits.

Thus, we now turn to whether Movants have a particularized interest protected under specific Act 250 criteria that could be injured by a grant of Applicant's requested permit. Our analysis takes into account the information in Movants' motion for party status filed on April

16, 2013 as well Movants' simultaneously filed binder of information in support of their party status motion, containing affidavits, previous motions for party status,[4] and other materials. The binder organizes the information by individual under tabs labeled as 2 (Charles Brown), 3 (Cathy DeGreenia), 4 (Forrest DeGreenia), 6 (Cynthia Fitzgerald), 7 (Steve Martin), 8 (Gustave Osterberg), 9 (Dana Robinson), and 10 (Ricky Safford).

## I.    Criterion 1(Air Pollution)

Movants Brown, Fitzgerald, Martin, Robinson, and Safford claim party status under Criterion 1 as it pertains to air pollution.  Their residences are located, respectively, 0.34 miles, 0.5 miles, 1 mile, 0.54 miles, and 0.25 miles from the asphalt plant site.[5]  They allege that emissions and dust from the plant could expose their properties to air pollution.  Movants cite specific amounts (in tons per year) of particular chemicals and substances that the Project will emit, based on information from Applicant's air pollution permit.  (Movants' Mot. for Party Status at 4, filed Apr. 16, 2013.)  Movants note various health effects associated with certain of these substances.  Id.  Movant Safford additionally states that he has asthma and certain chemical sensitivities that can be controlled by limiting his exposure to pollutants.

Applicant argues that these Movants have not indicated that they would offer any evidence sufficient to rebut the presumptions created by the air pollution permit that Applicant has obtained.  Although the existence of a valid permit and the presumptions it creates may pose a high evidentiary burden for Movants on the merits, these factors do not enter into an analysis of whether a person may participate in an appeal.  An aggrieved person need only articulate a "reasonable possibility that a decision on the proposed project may affect a person's particularized interest."  In re Bennington Wal-Mart, No. 158-10-11 Vtec, slip op. at 9–10 (Vt. Super. Ct. Envtl. Div. Apr. 24, 2012) (Walsh, J.).  We conclude that Movants Brown, Fitzgerald, Martin, Robinson, and Safford have alleged a reasonable possibility of harm based on the proximity of their properties to the Project and the types of substances the plant will emit.  We therefore **GRANT** them interested person status under Criterion 1 – Air Pollution.

---

[4] Motions for party status come before this Court de novo, thus we generally do not consider arguments made or materials submitted to a district commission below.  In re McLean Enters. Corp., No. 2S1147-1-EB, Mem. of Decision at 2 (Vt. Envtl. Bd. Sept 19, 2003).  Here, we consider them to the extent that we understand Movants to resubmit them to this Court for our consideration anew.  In any case, the prior requests for party status are nearly identical to the affidavits that Movants submit in support of their current motion.  We strongly encourage Movants to avoid unnecessarily duplicative filings in the future.

[5] The Court takes judicial notice of the standard conversion from miles to feet.

7

## II.    Criterion 1 (Noise)

Movants Brown, DeGreenia (Cathy and Forrest), Fitzgerald, Martin, and Robinson claim an interest under Criterion 1 as it pertains to noise.   Movants' residences lie, respectively, 0.34 miles, 0.25 miles, 0.5 miles, 1 mile, 0.54 miles, and 0.25 miles from the asphalt plant site. Movants allege that noise from the plant itself and from 164 one-way trips per day of 22-ton trucks coming or going from the Project site Mondays through Saturdays between the hours of 6:00 AM and 4:00 PM will increase noise levels at their properties.  (Movants' Mot. for Party Status at 5, filed Apr. 16, 2013.)   Although they do not reference particular studies or experts they will seek to utilize at trial, we understand Movants' filings to suggest that Movants would testify personally as to the Project's noise-related impacts.   Movants note that from their properties they already hear noise from Quarry operations or trucks.

Applicant argues that these Movants have not suggested that they will introduce evidence sufficient to rebut Applicant's contention that the Project satisfies applicable noise standards.   Applicant also argues, at least in reference to Movants DeGreenia, that noise is relevant under Criterion 1 only to the extent that adverse health impacts may result.   At this stage we do not look to the likelihood that testimony will lead to success on the merits, but rather to allegations of a reasonable possibility of harm to a particularized interest.   Finally, Applicant argues that certain Movants' properties are located such that distance and topography would preclude noise impacts, despite Movants' allegations that noise from Applicant's operations is already audible at their residences.   As Movants have alleged a reasonable possibility of harm to their interests, the actual effect of distance and topography on potential noise impacts is a matter for trial.

We conclude that Movants Brown, DeGreenia (Cathy and Forrest), Fitzgerald, Martin, and Robinson have alleged a reasonable possibility of harm based on the proximity of their properties to the proposed plant, and we **GRANT** them interested person status under the noise prong of Criterion 1.  Although Movant Safford includes a section within his motion for party status entitled "Criterion 1 (Air and Noise)," he alleges no impacts to his interests due to noise.   Thus, we **DENY** interested person status to Movant Safford under the portion of Criterion 1 addressing noise.

### III. Criterion 1(B)

Movants DeGreenia (Cathy and Forrest), Martin, Osterberg, and Robinson claim party status under Criterion 1(B), which relates to waste disposal. Criterion 1(B) requires an applicant to demonstrate that the proposed development "will meet any applicable health and environmental conservation department regulation regarding the disposal of wastes, and will not involve the injection of waste materials or any harmful or toxic substances into ground water or wells." 10 V.S.A. § 6086(a)(1)(B).

Movants' concerns relate to stormwater, and Movants state that their properties are lower in elevation than the proposed plant (that is, downhill). Movants DeGreenia, whose residence lies 0.25 miles from the plant, are concerned that pollutants from the plant could enter a brook that travels through their backyard. Movant Martin, whose residence lies 1 mile from the plant, fears that during storms, runoff from operations at the plant will contaminate a drainage ditch that runs across his property. Movant Osterberg, whose residence lies 0.34 miles from the site, fears contamination of wetlands and a groundwater-fed well on his property. Movant Robinson, whose residence lies 0.54 miles from the plant, states that in the spring, water flows from Applicant's property through a culvert on his property.

Applicant argues that Movants have not suggested that they will offer technical or scientific evidence to rebut the presumption created by the Multi-Sector General Permit that Applicant has obtained for the Project. Again, although the existence of a valid permit and the presumptions it creates may pose a high evidentiary burden for Movants on the merits, these factors do not enter into an analysis of whether a person may participate in an appeal. An aggrieved person need only articulate a "reasonable possibility that a decision on the proposed project may affect a person's particularized interest." Bennington Wal-Mart, No. 158-10-11 Vtec, slip op. at 9–10. We conclude that Movants show a reasonable possibility of harm to a particularized interest in the watercourses on their respective properties.

### IV. Criteria 5 and 9(K) (Traffic)

Movants Brown, DeGreenia (Cathy and Forrest), Fitzgerald, Martin, Osterberg, Robinson, and Safford claim party status under Criteria 5 and 9(K) with respect to the Project's potential impacts on traffic. Criterion 5, in pertinent part, requires that, in order to issue a permit, a district commission must find that the proposed development "[w]ill not cause unreasonable congestion or unsafe conditions with respect to use of the highways . . . and other

9

means of transportation existing or proposed." 10 V.S.A. § 6086(a)(5). Criterion 9(K), in pertinent part, directs the district commission to grant a permit for a development on or adjacent to public lands (including highways) upon a demonstration that the development will not "materially jeopardize or interfere with the function, efficiency, or safety of, or the public's use or enjoyment of or access to" the lands. 10 V.S.A. § 6086(a)(9)(K). Movants appear to regard traffic safety concerns under these distinct criteria as interchangeable; they are not. See Van Sicklen Ltd. P'ship, No. 4C1013R-EB, Mem. of Decision at 8 (Vt. Envtl. Bd. June 8, 2001) (explaining that Criterion 9(K) involves a higher threshold of material jeopardy or material interference, thus a person seeking party status under Criterion 9(K) as compared to Criterion 5 must make a higher showing).

In determining whether party status is appropriate relative to traffic concerns, "the relevant inquiry is whether the petitioner uses the roads that may be impacted by a project on a regular basis.") Pion Sand & Gravel, No. 245-12-09 Vtec, slip op. at 14 (quoting Re: Pike Indus., Inc., No. 5R1415-EB, Mem. of Decision, at 2 (Vt. Envtl. Bd. Nov. 19, 2004)). As this Court's predecessor, the Environmental Board, explained in Pike Industries:

> A project may cause a hazardous condition or congestion at a point some distance from the actual project site or the petitioner's home; conversely, a person may live immediately adjacent to a proposed project but never drive the roads that the project will use. Therefore, the location of a petitioner's residence is only one factor that may be relevant to a consideration of party status under Criterion 5, to the extent that it demonstrates that the petitioner's use [of] the roads may be impacted on a regular basis and that the petitioner may thus experience impacts that differ from those experienced by the public in general.

Pike Indus., No. 5R1415-EB, at 2. As long as the impacts to each Movant are particular to him or her, concrete, and are not impacts affecting the common rights of all persons, the existence of other similarly affected individuals does not make the interest less particularized. In re Champlain Marina, Inc. Dock Expansion, No. 28-2-09 Vtec, slip op. at 4 (Vt. Envtl. Ct. July 31, 2009) (Durkin, J.); In re McLean Enters. Corp., No. 2S1147-1-EB, Mem. of Decision at 6 (Vt. Envtl. Bd. Sept. 19, 2003). A particularized interest alone is insufficient, however; the interest must also be protected under a particular Act 250 criterion, and Movants must demonstrate a causal link between a decision on a proposed project and a harm to the interest. See Granville, No. 2-1-11 Vtec, slip op. at 6.

Based on Applicant's application and traffic study, there would be a maximum of 164 one-way truck trips each day entering and exiting the site, with potential impacts on

10

Graniteville Road and surrounding roads and intersections. (Movants' Mot. for Party Status at 5, filed Apr. 16, 2013.) According to Applicant's traffic study, 50% of the Project-generated truck traffic would travel through Quarry Street to access VT Route 14 and points north and west, 30% through Pirie Road accessing VT Route 14 and points south and west, and 20% through Websterville Road accessing US 302 and points east. Id. We now look to whether each Movant alleges a particularized interest protected under Criteria 5 and 9(K), and whether each has articulates a reasonable possibility the Project could harm that interest.

Movant Brown states that he regularly drives on Graniteville and Pirie Road. He expresses concerns about his safety while traveling on the same roads that the trucks will use. He also alleges that the trucks will degrade the roads, causing safety concerns. Besides noting the approximate number and weight of the trucks, however, he fails to show a reasonable possibility that they would cause unsafe conditions or materially jeopardize the safety of the roads. We conclude that Movant Brown has not shown a reasonable possibility of harm under Criteria 5 or 9(K).

Applicant does not object to the granting of party status on Criteria 5 and 9(K) to Movants Cathy and Forrest DeGreenia, except under the participation issue discussed above. (Applicant's Opp'n to Movants' Mot. for Party Status at 18, filed May 7, 2013.) Movants DeGreenia live on Graniteville Road and allege that the number of trucks that Applicant proposes to use will increase congestion in front of their house. They have alleged a reasonable possibility of harm to a particularized interest related to traffic under Criterion 5, but not under Criterion 9(K).[6]

Although Movant Fitzgerald does not live on a truck route, she alleges that she regularly travels impacted routes to commute to work, to reach the grocery store, and to walk her dogs. In support of her contention that the Project presents safety concerns, she points to specific characteristics of the road: the narrowness of the road and the lack of a shoulder. Movant

---

[6] In addition to congestions concerns, Cathy DeGreenia alleges that the trucks will lead to an increase in her job responsibilities as an emergency dispatcher for the City of Barre in that, during snowy weather, trucks would get stuck at the corner at the bottom of Quarry Hill Road, requiring her to call tow trucks. While Criteria 5 and 9(K) have safety components, an emergency responder does not have status under these criteria simply by virtue or his or her job responsibilities. Of course, an emergency responder who cannot obtain individual party status or interested person status could still serve as a witness on the topic of safety for someone who does demonstrate a particularized interest.

Fitzgerald has alleged a reasonable possibility of harm to a particularized interest related to traffic under Criterion 5, but not under Criterion 9(K).

Movant Martin lives on Graniteville Road where trucks will pass and states that he regularly crosses it to reach a nearby bike path. He therefore articulates a particularized interest; the fact that others live on the same road does not make his interest less particularized. He alleges that the number of trucks proposed would increase congestion on the road, making it more difficult for him to cross the street. Movant Martin has alleged a reasonable possibility of harm to a particularized interest related to traffic under Criterion 5, but not under Criterion 9(K).

Applicant does not object to the granting of party status on Criteria 5 and 9(K) to Movant Robinson. (Applicant's Opp'n to Movants' Mot. for Party Status at 20, filed May 7, 2013.) Movant Robinson is a legal guardian of two of his grandchildren, and he alleges that their bus stop is on a street that would experience increased congestion by the truck traffic that the Project would generate, compromising his grandchildren's safety. Movant Robinson has alleged a reasonable possibility of harm to a particularized interest related to traffic under Criterion 5, but not under Criterion 9(K).

Movant Safford lives on Cogswell Street and contends that he currently has difficulty exiting his driveway because of truck traffic. Applicant responds that trucks from the Project will not drive upon Cogswell Street. Without more information, we cannot conclude that the Project would further congest or endanger the safety of Cogswell Street if trucks from the Project will not drive upon it. To show a particularized interest, Movant Safford must show that he uses the roads that may be impacted by the project on a regular basis. Because he fails to do so, we cannot grant him interested person status under Criteria 5 and 9(K).

For the reasons stated above, we **GRANT** Movants DeGreenia (Cathy and Forrest), Fitzgerald, Martin, and Robinson interested person status to raise traffic congestion and safety concerns under Criterion 5, but not under Criterion 9(K). We **DENY** interested person status under Criteria 5 and 9(K) to Movants Brown and Safford.

## V.     Criterion 8

Movants Brown, DeGreenia (Cathy and Forrest), Fitzgerald, Martin, Robinson, and Safford claim party status under Criterion 8 with respect to the Project's potential impacts on aesthetics. Criterion 8 requires a district commission, before approving a proposed project, to

find that the development "[w]ill not have an undue adverse effect" on aesthetics. 10 V.S.A. § 6086(a)(8). "While generalized harm to the forest or the environment will not alone support standing, if that harm in fact affects the recreational or even the mere aesthetic interests of the [neighbor], that will suffice." Champlain Marina, No. 28-2-09 Vtec, slip op. at 6 (quoting Summers v. Earth Island Inst., 55 U.S. 488, 494 (2009)); see also Lujan, 504 U.S. at 562–63; In re Entergy Nuclear/ Vermont Yankee Thermal Discharge Permit, No. 89-4-06 Vtec, slip op. at 8–9 (Vt. Envtl. Ct. Jan. 9, 2007) (Wright, J.) (finding that allegations that a permit amendment would adversely affect fishing, boating, bird watching, and ecological activities were sufficiently specific "to establish the threat of injury to the individuals' particularized interests").

Movants Brown and Fitzgerald allege that they will be able to see, hear, and smell the asphalt plant operations from their respective properties. The aesthetic concerns of Movants DeGreenia and Martin relate to the visual and noise impacts of trucks traveling through their residential neighborhood. Movant Robinson alleges that the truck traffic and operational noises would interfere with the time he spends with his grandchildren outside on nearby bike paths. Movant Safford alleges that the air pollution from the trucks and the asphalt operation itself would interfere with his ability to enjoy the outdoors on his property.

Applicant does not object to the granting of party status on Criterion 8 to Movants DeGreenia, (Applicant's Opp'n to Movants' Mot. for Party Status at 18, filed May 7, 2013), or to Movant Robinson, id. at 20. As to Movants Brown, Fitzgerald, Martin, and Safford, Applicant objects on various grounds, such as the distance of their properties from the project site and Movants' failure to explain what evidence they would introduce to contradict Applicant's demonstration that the project will meet applicable noise standards and the standards for odors under Vermont's air pollution regulations. Because Movants have demonstrated a reasonable possibility of harm to a particularized interest under Criterion 8, we **GRANT** them interested person status under this Criterion.

## VI.    Criterion 9(K)

Movant Fitzgerald claims party status under Criterion 9(K) with respect to the Project's potential impacts on public investment. Criterion 9(K), in pertinent part, directs district commissions to grant a permit for a development on or adjacent to public lands upon a demonstration that the development "will not unnecessarily or unreasonably endanger the public or quasi-public investment" in the lands or "materially jeopardize or interfere with the

13

function, efficiency, or safety of, or the public's use or enjoyment of or access to" the lands. This criterion "seeks to protect state and local governments from adverse fiscal impacts on public facilities and investments that are adjacent to the proposed project." In re St. Albans Grp. & Wal-Mart Stores, Inc., No. 6F0471-EB, Mem. of Decision, at 9 (Vt. Envtl. Bd. Apr. 15, 1994).

Movant Fitzgerald is on the Barre Town Forest Planning Committee and notes that the Town of Barre selectboard recently approved a partially taxpayer-funded town forest to be located on the east side of Graniteville Road, across from the proposed plant. Her concern is that impacts from the nearby Project will interfere with this investment. Movant Fitzgerald does not explain how the town forest would be used, nor does she indicate the size of the investment or what percentage of the investment will be from public funds. Because of the proximity of the Project to the proposed town forest, however, we **GRANT** Movant Fitzgerald interested person status in the appeal under Criterion 9(K) – Public Investment.

## VII. Criterion 10.

As noted in Footnote 1 above, Movants Berard, DeGreenia (Cathy and Forrest), Everhart, Fitzgerald, Martin, Osterberg, Robinson, and Safford claim party status under Criterion 10, relating to whether the Project would not be in accordance with applicable municipal plans. As explained in our decision on Applicant's Motion to Dismiss Parties, issued concurrently with this decision, Movants fail to allege a reasonable possibility of harm to their particularized interests under Criterion 10. We therefore **DENY** the motion by these parties for party status under Criterion 10.

### Conclusion

For the reasons stated above, we **DENY** Movants' motion for party status as to Act 250 appellant status on all criteria requested for failure to participate in the District Commission proceedings. Movants shall be allowed to participate in the appeal of other parties in this case as interested persons as follows:

- Criterion 1 (air pollution): Charles Brown, Cynthia Fitzgerald, Steve Martin, Dana Robinson, and Ricky Safford;
- Criterion 1 (noise): Charles Brown, Cathy and Forrest DeGreenia, Cynthia Fitzgerald, Steve Martin, and Dana Robinson;
- Criterion 1(B): Cathy and Forrest DeGreenia, Steve Martin, Gustave Osterberg, and Dana Robinson;

14

- <u>Criterion 5 (traffic)</u>: Cathy and Forrest DeGreenia, Cynthia Fitzgerald, Steve Martin, and Dana Robinson;
- <u>Criterion 8</u>: Charles Brown, Cathy and Forrest De Greenia, Cynthia Fitzgerald, Steve Martin, Dana Robinson, and Ricky Safford;
- <u>Criterion 9(K) (public investment)</u>: Cynthia Fitzgerald.

Done at Burlington, Vermont, this 21st day of August, 2013.


_____
Thomas G. Walsh, Environmental Judge